IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LEAH S.,[1]                                              Case No.: 6:17-cv-1316-AC

                              Plaintiff,                 **OPINION AND ORDER**

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                              Defendant.

**ACOSTA, Magistrate Judge:**

 Leah S. ("plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her applications for Title II

Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI")

under the Social Security Act ("Act"). This Court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge

to enter final orders and judgment in this case in accordance with Federal Rule of Civil

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party in this case.

Procedure 73 and 28 U.S.C. § 636(c). Based on a careful review of the record, the Commissioner's decision is AFFIRMED.

## Procedural Background

Plaintiff applied for DIB and SSI on September 3, 2013, alleging disability as of January 1, 2008, due to bipolar disorder, dissociative mood disorder, social anxiety, depression, diabetes, panic attacks, and periodic mania. (Tr. 195, 202, 239.) Her applications were denied initially and upon reconsideration. (Tr. 126, 131.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and an administrative hearing was held on June 3, 2016. (Tr. 49-73.) ALJ MaryKay Rauenzahn issued a decision finding plaintiff not disabled on July 21, 2016. (Tr. 21-37.) The Appeals Council denied plaintiff's request for review on June 20, 2017, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.) This appeal followed.

## Factual Background

Born in 1974, plaintiff was 33 years old on the alleged onset date, and 42 years old at the time of the hearing. (Tr. 35, 52.) She earned a GED and completed some college. (Tr. 53.) Plaintiff previously worked as a telephone sales representative, customer service representative/user support analyst, and motor vehicle dispatcher. (Tr. 34-35.)

## Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and

detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, she is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either individually or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, she is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

\ \ \ \ \

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform past relevant work, she is not disabled; if she cannot, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

*ALJ's Decision*

The ALJ performed the sequential analysis, as noted above. At step one, the ALJ found plaintiff had not engaged in SGA since the alleged onset date, January 1, 2008. (Tr. 23.) At step two, the ALJ determined plaintiff had the following severe impairments: diabetes mellitus, type II; obesity; migraines; depression; bipolar II disorder; anxiety disorder, unspecified; post-traumatic stress disorder ("PTSD") with dissociative symptoms; panic disorder; and agoraphobia. (*Id.*) At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 24.)

The ALJ determined plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," with the following non-exertional limitations:

> She can have no exposure to workplace hazards, such as unprotected heights and dangerous machinery. She is limited to understanding, remembering, and carrying out routine instructions that can be learned in 30-days or less. She is limited to engaging in a low stress occupation, further defined as requiring only occasional changes in work setting and work duties and no conveyor belt paced work. She is also limited to performing only isolated work, further defined as requiring no public contact, only occasional coworker contact with no group or cooperative tasks, and occasional supervisor contact.

(Tr. 26.)

OPINION AND ORDER – 4

At step four, the ALJ determined plaintiff was unable to perform her past relevant work. (Tr. 34). At step five, the ALJ found plaintiff could perform jobs existing in significant numbers in the national economy, including hand packager, cleaner, and laundry sorter. (Tr. 35-36.) Accordingly, the ALJ concluded plaintiff was not disabled under the Act. (Tr. 36.)

*Discussion*

Plaintiff argues the ALJ erred by: (1) failing to provide clear and convincing reasons for rejecting plaintiff's subjective symptom testimony, and (2) improperly rejecting the medical opinion of Lois Michaud, Ph.D.

I.      Plaintiff's Subjective Symptom Testimony

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). A general assertion that the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between her testimony and conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity, and effect of the complained-of symptoms.

*Tommasetti*, 533 F.3d at 1040; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *see also* SSR 16-3p, *available at* 2017 WL 5180304. However, an ALJ may not reject a claimant's symptom testimony solely because it "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ gave several reasons for not fully crediting plaintiff's subjective symptom testimony. First, the ALJ found the full extent of plaintiff's alleged symptoms undermined by several inconsistencies in the record. For example, the ALJ noted that at the hearing plaintiff initially testified she did not socialize at all, but later stated she saw her best friend as much as possible, was a "social drinker" with visitors, and would often help her friend run errands with the help of her partner or son. (Tr. 27, 61, 63-64.) Similarly, plaintiff reported in an October 2013 function report that she shopped once or twice a week with accompaniment. (Tr. 264.) At the hearing, however, plaintiff stated that she "very rarely" shopped. (Tr. 62.) An ALJ may properly take into consideration a claimant's "tendency to exaggerate [and] inconsistent statements" when evaluating symptom testimony, and did not err in doing so here. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Plaintiff argues the ALJ mischaracterized the record in finding she denied any difficulty getting along with others in her 2013 function report. (Tr. 32.) In that report, plaintiff detailed that she text messaged with her friends daily, saw them in person once a week, and had never been terminated from a job because of problems getting along with others. (Tr. 265-66.) As plaintiff notes, however, she indicated that her conditions affected her ability to get along with

others; explaining, "I don't socialize or get along with many people." (Tr. 266.) Thus, the ALJ's finding that plaintiff "den[ied] *any* difficulty getting along with others" in her 2013 function report was an overstatement. (Tr. 32 (emphasis added).) Nevertheless, the fact remains that plaintiff gave inconsistent reports about her ability to socialize with others. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *see also Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) ("The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.") (citation omitted). Moreover, plaintiff's ability to socialize — although limited — indicates she is capable of some interaction with others, which is consistent with the ALJ's RFC formulation limiting plaintiff to isolated work, with no public contact and only occasional, superficial coworker and supervisor contact. Therefore, the ALJ properly discounted plaintiff's testimony that she did not socialize at all.

Plaintiff also argues that the ALJ mischaracterized her testimony by finding that when riding the bus she "sometimes . . . had accompaniment but otherwise she blocked out the noise with earphones." (Tr. 27.) As plaintiff correctly notes, she did not report riding the bus alone at the hearing; instead, she testified that when she had to take public transportation to get to an appointment, her adult son would ride with her and she would use her "headphones to help block out the noise and stuff." (Tr. 62.) Yet, the ALJ provided other clear and convincing reasons for discounting plaintiff's alleged need for constant accompaniment. *Batson*, 359 F.3d at 1197. For example, the ALJ found plaintiff "use[d] public transportation and . . . reported that she adequately and effectively managed her anxiety with self-soothing and deep breathing." (Tr. 31, 909-10); *see also* (Tr. 848) (plaintiff reporting that when dealing with interpersonal conflict at home "she gets into the car and drives to a park and sits and breathes" to calm down, and would return home "when she feels better"). Furthermore, in discussing plaintiff's restrictions in social

functioning, the ALJ found "she was able to attend medical appointments on her own, [where] she was described as cooperative and pleasant." (Tr. 25, 374, 399, 407, 512, 787-801.) Therefore, the ALJ properly discounted plaintiff's alleged need for accompaniment.

Next, the ALJ noted that plaintiff reportedly stopped working in August 2007 due to her impairments, yet she asserted "an alleged onset date of January 1, 2008 — four months after she quit working." (Tr. 28, 58-59, 239-40.) The ALJ found that despite endorsing a long history of depression and mental health conditions dating back to childhood, plaintiff was able to work for many years despite her impairments. (Tr. 28.) The ALJ determined there was "no evidence of any significant exacerbation in the claimant's medical conditions that would support her alleged onset date or her assertion that she quit for medical reasons. To the contrary, her treatment records show her mental health conditions were effectively treated with medication, and her mental status examinations were generally within normal limits." (*Id.*) An ALJ may discount a claimant's symptom testimony concerning impairments that have "remained constant for a number of years," but "ha[ve] not prevented her from working over that time." *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (citation omitted). An ALJ may also consider the fact that a claimant stopped working for reasons other than disability in evaluating subjective symptom testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Finally, impairments that can be adequately controlled with medication are not disabling for purposes of disability benefits. *See Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Plaintiff argues she has severe mental health symptoms that wax and wane. She asserts the ALJ erred by isolating periods of symptom improvement to support finding plaintiff's allegations less than entirely credible. Without specifically challenging the ALJ's finding that

plaintiff's symptoms were situational in nature, plaintiff asserts in a conclusory fashion that "the overall diagnostic record simply does not support th[e ALJ's] reasoning." Pl.'s Br. 31 (doc. 16). The ALJ, however, expressly noted the occasions where plaintiff reported increased symptoms, but found those periods were temporary in nature, attributable to medication non-compliance or situational stressors, and effectively managed with medication. (Tr. 29-32, 387, 607, 894-95, 899, 926, 941, 951, 978, 1002, 1008, 1117, 1232); *see also Oraivej v. Colvin*, No. C15-630-JPD, 2015 WL 10713977, at *6 (W.D. Wash. Oct. 5, 2015) (finding an ALJ's determination that the plaintiff's anxiety symptoms "were exacerbated by situational stressors" and effectively treated with medication clear and convincing reasons to discount the plaintiff's symptom testimony). Because the ALJ's findings were rational and based in substantial evidence, the court declines plaintiff's invitation to adopt her preferred interpretation of the medical evidence. *See Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision.") (internal citation omitted).

Moreover, the ALJ's finding is additionally supported by the medical evidence closest in time to plaintiff's alleged disability onset date. This evidence belies plaintiff's assertion that her long-standing mental health impairments deteriorated and became disabling by January 2008. (Tr. 421-22.) Accordingly, the court upholds the ALJ's findings pertaining to plaintiff's alleged onset date and the reason she stopped working.

The ALJ also found inconsistent plaintiff's testimony concerning her decision to take Haldol just prior to her May 2016 consultative examination with psychologist Dr. Michaud. (Tr. 27-28.) The Commissioner does not rely on this finding as a basis for discounting plaintiff's

testimony, and instead argues the ALJ's other reasons for discrediting plaintiff's symptom allegations were sufficiently clear and convincing. Def.'s Br. 4 n.3 (doc. 17).[2] The court agrees. Because the ALJ provided other sufficiently clear and convincing reasons for discounting plaintiff's symptom allegations, the ALJ's credibility determination remains supported by substantial evidence. *See Batson*, 359 F.3d at 1197.

Second, after thoroughly summarizing the medical record and stating her interpretations thereof, the ALJ found "the evidence of record did not contain objective findings that would reasonably support the degree of limitation the claimant alleged." (Tr. 32.) Specifically, the ALJ found plaintiff's mental status examinations were consistently within normal limits, her symptoms were effectively treated with medication and counseling, and she was never psychiatrically hospitalized despite presenting to the emergency room in May 2010 with complaints of hallucinations.[3] (Tr. 29-32.) "While subjective pain testimony cannot be rejected solely it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Plaintiff does not challenge the ALJ's finding with any specificity, but instead uses her preferred interpretation of the record and to argue the ALJ erred by isolating periods of symptom improvement. As discussed above, the ALJ thoroughly summarized the medical record and

---

[2] The Commissioner, however, does defend similar reasoning with regards to the ALJ's assessment of Dr. Michaud's medical opinion. *See infra* Part II.

[3] The Commissioner also argues that the ALJ identified large gaps in plaintiff's treatment record and evidence that she chose not to attend counseling. (Tr. 29-31.) An ALJ may discount symptom testimony based on an "unexplained or inadequately explained failure to seek treatment." *Tommasetti*, 533 F.3d at 1039. However, the ALJ did not cite such evidence as a basis for discrediting plaintiff's symptom allegations. Accordingly, the Commissioner's argument cannot serve to uphold the ALJ's determination. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (a reviewing court may not affirm based on a rationale not articulated by the ALJ).

accounted for the times plaintiff's symptoms were more pronounced. (Tr. 29-34.) For example, the ALJ noted that in May 2010, plaintiff reported she had been experiencing hallucinations for several months; on examination, however, she displayed normal speech and organized thought processes, with no evidence of delusions and no indication that she was responding to internal or visual stimuli. (Tr. 30, 351.) By December 2010, plaintiff was noted to be taking her medications regularly and was "doing quite well from a mental health standpoint." (Tr. 30, 487.) In another example, the ALJ noted that in 2014, plaintiff reported "increased anxiety due to limited finances and a tenuous living situation. Nevertheless, her mental health conditions were described as stable with some symptoms of insomnia and low energy . . . . [and] her mental status examinations were again normal." (Tr. 30, 787-801, 1229-30.) By October 2015, despite plaintiff's complaints of depressive symptoms, her mental health provider noted she no longer met the criteria for a diagnosis of depression. (Tr. 31, 947.) Although plaintiff takes issue with the ALJ's interpretation of the medical evidence, she has failed to demonstrate that the ALJ's findings were unreasonable or unsupported by substantial evidence. Accordingly, the court finds the ALJ did not err in relying, in part, on the objective medical evidence to find plaintiff's testimony less than entirely credible. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Finally, the ALJ found "plaintiff engaged in a number of activities of daily living ["ADLs"] that undermine[d] her assertions related to the intensity, persistence, and limiting effects of her anxiety, depression, panic, agoraphobia, and other mental health symptoms." (Tr. 32.) An ALJ may discount a claimant's testimony if it is inconsistent with the claimant's ADLs, or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Here, the ALJ found plaintiff's allegation that her depression

was so bad she showered infrequently and rarely changed her clothes was inconsistent with treatment notes indicating plaintiff generally presented to her appointments with adequate grooming and hygiene. (Tr. 32, 263, 849, 858, 874, 904, 926.) Plaintiff explains this inconsistency by noting that she usually showered before appointments. (Tr. 1247.) Nevertheless, plaintiff's ability to shower and dress appropriately when necessary supports a finding that she was capable of overcoming her alleged limitations despite her depression. On balance, the ALJ's finding was reasonable and supported by substantial evidence.

The ALJ also noted that plaintiff "prepared meals, performed household chores, drove, attended to the shopping, and cared for her teenage son and family pets." (Tr. 32, 261-68, 845, 847, 920, 936, 946, 996, 1099, 1242-55.) She otherwise "spent her time watching television, listening to music, playing video games, using the computer, or reading," and at times she made jewelry and went camping. (Tr. 32, 387, 920, 1043.) Plaintiff argues the ALJ erred because "the record fail[ed] to document that plaintiff performed any of those activities in a way that contradicts her allegations of disability, and the ALJ fail[ed] to explain how any of those activities is transferable to a work setting." Pl.'s Br. 29. Plaintiff's contention is unavailing. In discussing the consultative opinion evidence, the ALJ expressly noted plaintiff's "activities suggest the claimant is capable of more than two or three-step tasks," and found "a limitation to simple instructions more appropriate." (Tr. 34.) In other words, the ALJ found plaintiff's ADLs indicated skills transferable to a work setting. *See Orn*, 495 F.3d at 639.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence for finding plaintiff's testimony less than entirely credible. Therefore, the Court upholds the ALJ's assessment of plaintiff's symptom testimony.

\ \ \ \ \

II.     Medical Opinion Evidence

The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600–01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

Plaintiff argues the ALJ erred in giving little weight to consultative psychologist Dr. Michaud's medical opinion. Dr. Michaud conducted a psychological evaluation of Plaintiff on May 27, 2016. (Tr. 1242-55.) She noted plaintiff's presentation and performance on the mental status exam were "clouded by her decision to consume medications just prior to entering the office." (Tr. 1250.) The doctor diagnosed PTSD, with dissociative symptoms; panic disorder; agoraphobia; bipolar II disorder, moderate; and amphetamine-type substance abuse, in sustained remission. (Tr. 1251.) Dr. Michaud opined that plaintiff was moderately to markedly limited in the ability to understand and remember simple instructions, as well as markedly limited in the ability to carry out simple instructions; make judgments on simple work-related decisions; and understand, remember, and carry out complex instructions. (Tr. 1253.) Dr. Michaud further assessed plaintiff with extreme limitations in her ability to interact appropriately with the public,

supervisors, and coworkers, as well as her ability to respond appropriately to usual work situations and changes in a routine work setting.[4] (Tr. 1254.) Dr. Michaud opined that plaintiff's limitations began approximately in 2005, and that she was incapable of managing an award of benefits in her own best interest. (Tr. 1255.)

Dr. Michaud's opinion was contradicted by the opinions of reviewing consultants Drs. Kennemer and Henry. *Compare* (Tr. 82-83, 107-09), *with* (Tr. 1250-55.) Therefore, the ALJ needed to provide specific and legitimate reasons for giving less weight to Dr. Michaud. *Bayliss*, 427 F.3d at 1216. First, the ALJ gave little weight to Dr. Michaud's opinion "because it was based on a one-time evaluation and is inconsistent with the longitudinal medical evidence of record, including the claimant's mental health treatment notes." (Tr. 33.) As plaintiff accurately notes, that Dr. Michaud saw her only once — although a relevant factor for the ALJ to consider — cannot form the sole basis for rejecting Dr. Michaud's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Indeed, if this rationale were sufficient to reject the findings of a consultative examiner, there would be no reason for the Administration to order such evaluations. Notably, the Commissioner does not rely on this rationale to defend the ALJ's decision. Def.'s Br. 15 n.4 (doc. 17). However, an ALJ should consider how "consistent a medical opinion is with the record as a whole," 20 C.F.R. §§ 404.1527(c), 416.927(c), and may discount a medical source opinion that is inconsistent with other evidence in the record. *Morgan*, 169 F.3d at 601-03. Specifically, the ALJ found Dr. Michaud's assessed limitations, and, her opinion that plaintiff made little progress with prior mental health treatment,

---

[4] For the purposes of Dr. Michaud's opinion: (1) "Moderate" means "There is more than a slight limitation in this area but the individual is still able to function satisfactorily;" (2) "Marked" means "There is serious limitation in this area. There is a substantial loss in the ability to effectively function;" and (3) "Extreme" means "There is major limitation in this area. There is no useful ability to function in this area." (Tr. 1253.)

"inconsistent with the claimant's treatment records, which showed normal mental status examinations and stable mental health conditions with medication compliance." (Tr. 33.)

Plaintiff argues the ALJ's finding was not supported by the record. She again asserts that her summary of the medical evidence demonstrates her symptoms waxed and waned, whereas the ALJ focused on isolated instances of improvement to find plaintiff not disabled. Pl.'s Br. 22 (doc. 16) (citing *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014)). In *Garrison*, the Ninth Circuit found that "[r]ather than describe [the claimant's] symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [the claimant]." *Garrison*, 759 F.3d at 1018. Here, however, the ALJ did not mischaracterize the record. Instead, she "chronicled the entire record, recognizing symptom increases and correlating those periods generally with either cessation of medication or treatment, the need for a medication adjustment, or a situational stressor." Def.'s Br. 15-16; *see also* (Tr. 29-34.).

In response, Plaintiff cites *Garrison* for the proposition that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment . . . . we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison*, 759 F.3d at 1018 n.24. In *Garrison*, the Ninth Circuit found "the record shows that Garrison's occasional decisions to go 'off her meds' were at least in part a result of her underlying bipolar disorder and her other psychiatric issues." *Garrison*, 759 F.3d at 1018 n.24. Here, plaintiff has put forward no evidence that she stopped taking her medications due to her psychological impairments. Moreover, beyond citing *Garrison* for its

sweeping language, plaintiff does not even allege that her medication non-compliance was a result of her psychological impairments. *See* Pl.'s Br. 20-25 (doc. 16); Pl.'s Reply 1-6 (doc. 18). Accordingly, plaintiff's reliance on *Garrison* is unavailing, and the ALJ did not err in giving Dr. Michaud's opinion limited weight, because it was inconsistent with the longitudinal medical evidence.[5]

Next, the ALJ gave Dr. Michaud's opinion limited weight because the doctor "relied largely on the claimant's subjective reports," observing "the claimant's own son noted on several occasions that the claimant's allegations of symptoms were at times exaggerated." (Tr. 33.) When a doctor's "opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (internal quotations omitted). Plaintiff argues that "[a] psychiatrist's report 'should not be rejected simply because of the relative imprecision of the psychiatric methodology . . . . Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient.' " Pl.'s Br. 23 (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citations omitted)).

In *Buck*, the ALJ rejected the opinion of an examining psychologist because it was contradicted by the opinion of a non-examining medical expert, and because it was based, in part, on the claimant's report that he had trouble keeping a job. *Buck*, 869 F.3d at 1049-50. The Ninth Circuit found the conflicting medical opinion was an insufficient basis for rejecting the examining psychologist's opinion, because " '[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining

---

[5] Additionally, the court finds unpersuasive Plaintiff's unsupported contention that it is "similarly inappropriate to dismiss evidence of disabling mental symptoms on the ground that they were merely responses to medication changes or 'situational stressors.' " Pl.'s Reply 2; *see Oraivej*, 2015 WL 10713977, at *6.

physician.'" *Id.* at 1050 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In holding that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness," the Ninth Circuit noted that the examining source conducted a clinical interview and mental status evaluation of the claimant, which were "objective measures [that] cannot be discounted as a 'self-report.' " *Id.* at 1049. Because the examining psychologist's opinion was premised on both the claimant's self-reporting and the doctor's objective measures, the *Buck* court held, "[i]n the context of th[at] case, [the examining psychologist's] partial reliance on [the claimant's] self-reported symptoms [was] not a reason to reject his opinion." *Id.* In other words, *Buck* did not overturn the well-settled rule that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted" by the ALJ. *Id.* (quoting *Morgan*, 169 F.3d at 602). Instead, *Buck* clarifies that an ALJ errs when she relies on a claimant's discredited subjective reporting as a basis for rejecting the "objective measures" of a psychologist's evaluation. *Id.*

　　*Buck* is distinguishable from the present case for several reasons. First, the ALJ did not rely on plaintiff's less than credible self-reporting as the sole basis for giving little weight to Dr. Michaud's opinion. (Tr 33.) Rather, the ALJ additionally found Dr. Michaud's opinion undermined by the treatment record, and, discussed further below, plaintiff's over-medicated appearance. (*Id.*) Second, the examining psychologist in *Buck* relied on the claimant's self-reporting to a far lesser degree than present here. *Buck*, 869 F.3d at 1049 (noting the psychologist's opinion was influenced only by the claimant's self-report that he had trouble keeping a job). Here, independent review of Dr. Michaud's assessment reveals her opinion was heavily premised on plaintiff's self-reported allegations. *See* (Tr. 1242-55.) Finally, unlike

*Buck*, the ALJ noted instances where even plaintiff's reports to Dr. Michaud were exaggerated. (Tr. 33.) For example, plaintiff reported to Dr. Michaud that she experienced frequent nightmares and trauma-related flashbacks. (Tr. 1247.) She further detailed "that she ha[d] a 16-year-old personality, whom . . . is present once a week and dresses and does the claimant's hair, as well as sometimes cooks for the family." (*Id.*) As the ALJ noted, however, plaintiff's adult son informed Dr. Michaud that he had never witnessed plaintiff experience a flashback, and he had not seen plaintiff's "alter[nate] personality" for over two years. (Tr. 1247.) Plaintiff also endorsed experiencing olfactory hallucinations that smelled of "electronics frying," but her son told Dr. Michaud that he smelled the same thing at home and they just had not been able to find the source. (*Id.*) Therefore, the ALJ did not err in giving little weight to Dr. Michaud's assessed limitations to the extent they were based on plaintiff's properly discounted symptom allegations. *See Ghanim*, 763 F.3d at 1162.

As to the objective aspects of Dr. Michaud's assessment, *i.e.*, her mental status examination and clinical observations of plaintiff, the ALJ found plaintiff's "presentation was compromised by her admitted use of multiple medications just prior to her evaluation." (Tr. 33.) Dr. Michaud documented that plaintiff took two one-milligram tablets of Haldol and one one-milligram dose of Clonazepam just prior to her appointment, "which caused a slowing of her thought processing." (Tr. 1242.) When questioned by the ALJ at the hearing about her decision to take Haldol before her evaluation, plaintiff testified that she took it because she was nervous and "needed to be able to talk for [her]self." (Tr. 53.) Noting that plaintiff reported to Dr. Michaud she was prescribed Haldol as a sleep-aid, the ALJ inquired of plaintiff why she took Haldol not as prescribed. (Tr. 53-54.) Plaintiff responded that she was prescribed two different doses of Haldol: a ten-milligram dose for sleep and a one-to-two-milligram dose for anxiety.

(Tr. 54.) Observing that plaintiff did not appear nervous at the hearing despite being asked a lot of questions, the ALJ inquired "so what's the difference between going to the physical examination and coming to this hearing?" (Tr. 55.) Plaintiff answered that she was actually "not okay" and had to take a Clonazepam "to get here." (*Id.*)

Plaintiff argues the ALJ erroneously faulted her for taking her medication as prescribed. She notes that she was prescribed low doses of Haldol as needed for "agitation" in April 2016, one month prior to Dr. Michaud's evaluation. (Tr. 1008.) However, the treatment records clarify that plaintiff was instructed to take small doses of Haldol on an as-needed basis to help her cope with increased anger due to stressors she was experiencing at home. (Tr. 1008-1012.) Namely, plaintiff's adult son was leaving dirty dishes with half-eaten food in his room and making no effort to clean up after himself despite plaintiff finding rats and a frog in his room. (Tr. 1008.) Plaintiff was also upset with her partner because he was not going into work even though he "finally found a job." (*Id.*) Moreover, plaintiff took both Haldol and Clonazepam before her psychological examination, but only took Clonazepam to alleviate her anxiety for her hearing. (Tr. 28, 1010.) Unlike plaintiff's Haldol prescription, Plaintiff's prescription for Clonazepam was prescribed explicitly for anxiety.[6] (Tr. 1010.) Yet, despite alleging that she needed both medications to be able to answer Dr. Michaud's questions, plaintiff "did not appear to be nervous or anxious at the hearing, despite being asked multiple questions." (Tr. 28.) Of further note, plaintiff does not assert she was experiencing agitation prior to her appointment with Dr. Michaud. Therefore, the ALJ's finding that there was "no indication Haldol was prescribed for or intended to manage [plaintiff's] anxiety" was supported by substantial

---

[6] Notably, the same treatment provider prescribed plaintiff Haldol for "agitation" and Clonazepam for "anxiety," indicating that the medications were intended to treat different symptoms. (Tr. 1010.)

evidence. (*Id.*); *see also Burch*, 400 F.3d at 679 (where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld).

The ALJ found plaintiff's "overmedicated appearance and presentation at the consultative examination is inconsistent with her appearance and normal presentation at her ongoing mental health appointments." (Tr. 33); *see, e.g.*, (Tr. 373, 425, 428, 442, 539-40, 793, 799, 858, 864, 869, 874, 880, 915, 1203.) In fact, Dr. Michaud's interview "took nearly three hours to complete," because plaintiff "exhibited slowed thought processes throughout th[e] session," and "it was necessary to repeat each question" on the mental status examination due to plaintiff's over-medicated state. (Tr. 1242, 1249.) Plaintiff emphasizes that her son informed Dr. Michaud that plaintiff's appearance on examination was consistent with how she usually presented after taking her anxiety medication. (Tr. 1247, 1249-50.) If that were the case, one would expect such obvious and severe cognitive deficiencies would be documented somewhere in plaintiff's treatment record. Beyond her son's report, however, plaintiff points to no evidence demonstrating medication side-effects caused her such severely impacted thought processes. Finally, plaintiff notes that her Haldol prescribed for "agitation" was issued only one month prior to her examination with Dr. Michaud. (Tr. 1008.) Thus, argues plaintiff, her presentation elsewhere in the record before the medication change cannot constitute substantial evidence inconsistent with Dr. Michaud's opinion. As discussed, however, the record demonstrates plaintiff did not take Haldol as prescribed.[7] Accordingly, the ALJ did not err in assigning little

---

[7] The court further notes that despite plaintiff being instructed to "take one [1mg Haldol] tablet by mouth twice daily as needed for agitation," she informed Dr. Michaud that in addition to Clonazepam, she took "two Haldol, 1mg each" just prior to her examination. (Tr. 302.) Thus, plaintiff took an entire day's worth of Haldol in one sitting, effectively doubling her dose. Therefore, even assuming plaintiff took Haldol before her examination because she was agitated, the ALJ finding she did not take her medication as prescribed and was over-medicated at her psychological examination would still find support in the record.

weight to Dr. Michaud's opinion because the objective components of her assessment were unduly affected by plaintiff's over-medicated state.

<em>Conclusion</em>

For the reasons discussed above the decision of the Commissioner is **AFFIRMED.**

IT IS SO ORDERED.

DATED this ___26th___ day of November, 2018.

JOHN V. ACOSTA
United States Magistrate Judge